11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Frank James Webb                  

Appellant

Vs.                   No.
11-02-00068-CR B Appeal from Erath County

State of Texas

Appellee

 

The jury
convicted appellant of engaging in organized criminal activity by committing
burglary of a habitation.  TEX. PENAL
CODE ANN. '' 30.02 & 71.02 (Vernon Supp. 2003).  The jury then assessed punishment at 20
years confinement and a $10,000 fine. 
Appellant presents three issues on appeal.  He argues that there was insufficient evidence to corroborate the
accomplice testimony, that there was insufficient evidence that appellant was
engaging in organized criminal activity, and that the trial court erred in not
granting a motion for a directed verdict because the structure in question was
not a habitation.  We affirm.

Background
Facts

            The
complainant lived in a house several miles from town on the Lingleville
Highway.  During the summer of  2001, the complainant was remodeling his
house; and, while the remodeling was taking place, the complainant and his
family moved to temporary quarters in town. 
The extensive remodeling left the home without running water, furniture,
cabinets, or carpet.  Appellant was
employed by the painting contractor. 
During the repainting, the painters, including appellant, found a hidden
door behind a cabinet that led to a storm cellar that was being used by the
complainant to store valuable items. 
The complainant returned to the home in August and discovered that the
cellar had been ransacked. 

                                                Corroboration
of Accomplice Testimony








Under TEX.
CODE CRIM. PRO. ANN. art. 38.14 (Vernon 1979), a conviction cannot stand on
accomplice testimony unless it is corroborated by other evidence tending to
connect the defendant with the offense; the evidence is insufficient if it
merely proves the commission of the offense. 
Cathey v. State, 992 S.W.2d 460, 462 (Tex.Cr.App.1999), cert. den=d, 528 U.S. 1082 (2000).  When
considering accomplice testimony in determining the sufficiency of the
corroborating evidence, all of the accomplice testimony is eliminated from
consideration.  McDuff v. State, 939
S.W.2d 607, 612 (Tex.Cr.App.), cert. den=d, 522 U.S. 844 (1997).  The remaining
evidence is then considered in the light most favorable to the jury=s verdict. 
Gill v. State, 873 S.W.2d 45, 48 (Tex.Cr.App.1994).  It is not necessary that the corroborating
evidence directly connect the defendant to the crime or that it be sufficient
by itself to establish guilt; it need only tend to connect the defendant to the
offense.  Cathey v. State, supra at
462.  If the combined weight of the
non-accomplice evidence tends to connect the defendant to the offense, the
requirement of Article 38.14 has been fulfilled.  Cathey v. State, supra at 462.

The State
relied primarily upon accomplice testimony to convict appellant. Three
accomplices testified at trial.  Kaylynn
Teter, an accomplice, testified that her husband was Albert Webb, appellant=s brother. 
Teter overheard a conversation between appellant and Aaron Taft
discussing the burglaries.  Taft was
talking about some money, guns, and coins that he had taken. Appellant then
gave Teter and Albert Webb $5,000 in cash for a car.  Teter said that appellant received the money from Taft.  Teter also testified that Taft and appellant
brought guns and coins to appellant=s house and that she and Albert Webb were to take them to
California.  Teter, Taft, and Albert
Webb sold the coins in Kingman, Arizona, to Travis Smith, a cousin of both
appellant and Albert Webb.

Taft
testified that he learned of the complainant=s house from appellant. 
Appellant, Taft, and Jamie Carman went to the complainant=s home. 
Appellant opened the garage door, and appellant and Taft went into the
cellar and took some money and guns from the safe.  Taft and appellant then went to Arizona and California to sell
the guns and coins.  They traded some
guns in California for drugs.  Taft also
testified that he and appellant divided most of the money but that they gave
some money to Carman and appellant=s father.








Carman
testified that she, appellant, and Taft drove to the complainant=s house and that appellant and Taft entered
the house through the garage door.  They
returned carrying bank bags.  Appellant
drove the car to and from the complainant=s house.  They went to Carman=s apartment and opened the bags.  Taft gave Carman about $1,800 in 20 dollar
bills.  Several days later, Carman,
Taft, and appellant went back to the complainant=s house to steal more property. 
This time, they returned with guns. 
Carman was given two guns to keep. 

Non-accomplice
testimony included testimony by the painting contractor that appellant worked
for him as a painter=s
helper for two weeks during June 2001, 
that appellant was part of the painting crew that found the hidden door,
and that appellant also knew where the garage door opener was placed to allow
the painters to gain access to the house. 
The painting contractor further testified that appellant did not show up
for work on June 28, 2001, and that appellant had not returned to claim his
last paycheck.  Officer Larry Wand
testified that property stolen from the complainant was found in the house
where appellant lived and that, while the search warrant was being executed,
appellant drove up in a maroon Ford Mustang. 
Officer Tommy Williford testified that a confidential informant told him
that stolen property in Dublin was coming from a residence on the Lingleville
Highway.  The confidential informant
also said that a construction crew was present and that there were multiple
burglaries of the same house.  Officer
Williford also found the complainant=s stolen property at three other locations where friends or relatives
of appellant lived.  Richard Lynn George
testified that he sold a maroon Ford Mustang in July 2001 to Albert Webb for
$5,500 cash.  Together, this
non-accomplice evidence tends to connect appellant with the crime.  See Cathey v. State, supra at 462.  We overrule appellant=s first issue.

Organized
Criminal Activity

In his
second issue, appellant complains that the trial court erred in denying his
motion for new trial because the evidence was insufficient to support the jury=s verdict that he engaged in organized
criminal activity.  








To
determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664
(Tex.Cr.App.2000).  In order to
determine if the evidence is factually sufficient, we must review all of the
evidence in a neutral light and determine whether the evidence supporting guilt
is so weak as to render the conviction clearly wrong and manifestly unjust or
whether the evidence supporting guilt, although adequate when taken alone, is
so greatly outweighed by the overwhelming weight of contrary evidence as to
render the conviction clearly wrong and manifestly unjust.  Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Johnson
v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).  

To be
convicted of engaging in an organized criminal activity, a defendant must have
committed, or conspired to commit, an underlying offense with the specific
intent to participate in that offense with three or more persons.  Shears v. State, 895 S.W.2d 456, 459
(Tex.App. - Tyler 1995, no pet=n); see Barber v. State, 764 S.W.2d 232, 234-35 (Tex.Cr.App.1988).  By definition, a person Aconspires to commit@ an offense when he agrees with others to
engage in conduct that would constitute an offense and performs some overt act
pursuant to their agreement.  TEX. PENAL
CODE ANN. ' 71.01 (Vernon Supp. 2003).  Evidence of the defendant's conduct and
systematic methods of operation together with evidence of group participation
in joint activities supports a conviction. 
Shears v. State, supra at 459; 
Kennard v. State, 649 S.W.2d 752, 764 (Tex.App. B Fort Worth 1983, pet=n ref'd). 
Appellant=s intent can be determined from his words,
acts, and conduct.    Shears v. State,
supra at 459.  An agreement may be
inferred from the acts of the parties. 
Section 71.01(b);  Shears v.
State, supra 459 (Tex.App. - Tyler 1995, no pet=n).

Because the
nature of the offense of engaging in criminal activity involves working within
a conspiracy, direct evidence is rarely available; and the State must rely on
circumstantial evidence to prove the essential elements of the offense.  Shears v. State, supra at 459.  In a circumstantial evidence case, it is not
necessary that every fact point directly and independently to the guilt of the
accused.  Shears v. State, supra at 459.

Appellant
states that the State did not prove that a combination existed.  A combination is defined as three or more
persons who collaborate in carrying on criminal activities.  Section 71.01(a).  Appellant points to the testimony of Taft where Taft says that
appellant threatened to kill him if he did not participate in the first burglary.  Appellant also points to the testimony by
both Taft and Carman where they said that the first burglary was made without
any deliberation.  However, there is
evidence that Taft, Carman, and appellant burglarized the house at least twice
and that each person participated in the proceeds. 








The fact
finder is the sole judge of the credibility of the witnesses and the weight to
be given their testimony.  TEX. CODE
CRIM. PRO. ANN. arts. 36.13 & 38.04 (Vernon 1979 & 1981); Adelman v.
State, 828 S.W.2d 418, 421 (Tex.Cr.App.1992). The fact finder may choose to
believe or disbelieve all or any part of any witness=s testimony. 
Sharp v. State, 707 S.W.2d 611, 614 (Tex.Cr.App.1986), cert. den=d, 488 U.S. 872 (1988).  In
viewing the evidence in the light most favorable to the verdict, the evidence
that Taft, Carman, and appellant burglarized the same house on multiple
occasions and split the proceeds is ample to support appellant=s conviction.  The accomplice testimony was supported by non-accomplice evidence;
therefore, the accomplice testimony may be considered for all purposes.  Having reviewed all of the evidence, we find
that the evidence is factually sufficient to support appellant=s guilt. 
Appellant=s second issue is overruled. 

The
Habitation

Appellant=s third issue claims error in overruling
appellant=s motion for directed verdict because
appellant claims that the structure was not a habitation as defined in the
Texas Penal Code.  A complaint about
overruling a motion for directed verdict is in actuality an attack upon the
sufficiency of the evidence to sustain the conviction.  McDuff v. State, supra at 613; Cook v.
State, 858 S.W.2d 467, 469‑70 (Tex.Cr.App.1993).  When reviewing the legal sufficiency of the
evidence to determine whether the State has indeed proven an element of the
offense, this court must look at all the evidence in the light most favorable
to the verdict.   

In
applying the criminal standard of review, this court does not ask whether it
believes that the evidence at trial established beyond a reasonable doubt that
the house undergoing a major renovation was a Ahabitation.@   Instead, the relevant question is whether,
after viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found that the house was a Ahabitation@ beyond a reasonable doubt. 
Jackson v. Virginia, supra at 318‑19; see Clewis v. State, 922
S.W.2d 126, 128‑29 (Tex.Cr.App.1996). 
The trier of fact is the exclusive judge of the credibility of witnesses
and the weight to be given their testimony and is free to accept or reject any
or all of any witness=s
testimony.  Articles 36.13 & 38.04;
Adelman v. State, supra at 421.








   TEX. PENAL CODE ANN. ' 30.01 (Vernon 1994) defines Ahabitation@ as Aa structure...that is adapted for the
overnight accommodation of persons.@   The controlling standard for
determining whether a structure qualifies as a habitation under this definition
is expressed in  Blankenship v. State,
780 S.W.2d 198 (Tex.Cr.App.1989)(opinion on reh=g).  The Blankenship
court noted that determining whether a structure is or is not suitable for the
overnight accommodation of persons is a Acomplex, subjective factual question fit for a jury=s determination.@ 
Blankenship v. State, supra at 209.  
Factors to be considered include whether the structure was being used as
a residence at the time of the trespass; whether the structure Acontained bedding, furniture, utilities, or
other belongings common to a residential structure@; and whether the structure was of such
character that it was likely intended to accommodate persons overnight.  Blankenship v. State, supra at 209.  The Blankenship court explicitly
offered a house as an example of this last factor and noted that A[a]ll of these factors are relevant; none are
essential or necessarily dispositive.@  Blankenship v. State, supra at
209.

We have
reviewed all the evidence in the present case using the foregoing standard, and
we conclude that a reasonable trier of fact could have determined that the
house was Aadapted for the overnight accommodation of
persons.@  At
the time of the burglaries, the house had been vacant for about three or four
months.  The furniture in the house was
being stored in one room to protect it from paint while the interior of the
house was being painted; and, because the sinks and toilets were also being
remodeled, the water had been shut off. 
On the other hand, the complainant still considered the house his home;
and, during the renovation period, the complainant and his family went to the
house almost daily.  The house had
electrical power, and the complainant and his family still had personal
possessions in the house.  Also, the
structure was a house that the complainant and his family lived in prior to the
renovation and planned to live in after the renovation was completed.  Based on the facts and circumstances of this
case, we conclude that the record contains sufficient evidence from which a
rational trier of fact could have found beyond a reasonable doubt that the
complainant=s home was a Ahabitation@
within the meaning of Section 30.02(d)(1). 
We overrule appellant=s third issue.

This
Court=s Ruling

The
judgment of the trial court is affirmed. 

 

TERRY McCALL

JUSTICE

January 16, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.